*E-FILED - 6/12/08*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ROBERT A. CHESTRA, | No. C 06-2497 RMW (PR) |
| Petitioner, | **ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |
| v. | |
| DARREL ADAMS, | |
| Respondent. | |

## INTRODUCTION

Petitioner Robert Chestra, a California state prisoner who is proceeding pro se, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his conviction for second-degree robbery. In response to the order to show cause, respondent has filed an answer and petitioner has filed a traverse. Having reviewed the briefs and the underlying record, the court concludes that petitioner is not entitled to relief based on the claims presented and will deny the petition.

## BACKGROUND

The charges against petitioner arose from his robbing a bank in Burlingame, California in 2002. The California Court of Appeal summarized the facts as follows:

Order Denying Petition for Writ of Habeas Corpus
G:\pro-se\sj.rmw\hc.06\Chestra497.hcruling.md

> On September 23, 2002, near 1:15 p.m., [petitioner] walked into the Washington Mutual Bank in Burlingame and got into line. When [petitioner's] turn arose, he gave the teller, Jinky Lasat, a note that said, "'I have a gun. Give me your 100s and 50s.'"
>
> Lasat considered pushing her alarm, but she was afraid that if she did, [petitioner] might shoot her. She decided to stall him instead. Lasat returned the note to [petitioner] and told him, "'I don't know what the note sa[ys].'" [Petitioner] replied, "'You know what it said.'" Believing [petitioner] was serious about robbing the bank, Lasat gave him all the $100 and $50 bills in her drawer; a total of $1,100. [Petitioner] put the money into his pants pocket and left. He walked about a block and a half to where he had parked his car, a Toyota 4Runner. [Petitioner] got into his car and drove away.
>
> Meanwhile, Lasat screamed to her manager that she had been robbed. She called the police and provided a description of [petitioner].
>
> A few minutes later, at 1:28 p.m., Burlingame Police Sergeant Michael Matteucci was on patrol when he heard a report that the Washington Mutual Bank had been robbed. The report provided a description of the robber and said he claimed to be armed. Matteucci drove toward the bank[.] When he was about four blocks away, he saw a Toyota 4Runner driving toward him. The driver, [petitioner], matched the description of the robber, so Matteucci turned his patrol car around and started to follow the 4Runner. After calling for and obtaining back-up, Matteucci stopped the 4Runner and detained [petitioner]. Another officer brought Lasat to the scene of the stop. She identified [petitioner] as the man who had robbed her just minutes earlier.

People v. Chestra, No. H028197, 2004 WL 3019001 (Cal. Ct. App. Dec. 30, 2004) at *1 ("Op.").

A San Mateo County Superior Court jury convicted petitioner of second-degree robbery (Cal. Penal Code § 212.5(c). Op. at 1. The superior court, taking into consideration sentencing enhancements for petitioner's prior felony convictions and prior prison terms (Cal. Penal Code §§ 667(a), 667.5, 1170.12(c)(2)), sentenced petitioner to a total term of forty years to life in state prison. Id. The California Court of Appeal for the First Appellate District, in an unpublished opinion, affirmed petitioner's conviction and summarily denied petitioner's habeas petition. Id.; Ans., Exs. F, H. The California Supreme Court denied direct review and his state habeas petition. Ans., Ex. I, J. Petitioner filed the instant federal petition in 2006.

As grounds for federal habeas relief, petitioner alleges that trial counsel rendered ineffective assistance when he failed to (A) impeach Officer Matteucci's testimony at the

state suppression hearing by using the police reports; (B) call the other arresting officers to testify at the suppression hearing to further impeach Officer Matteucci's testimony; and (c) inform petitioner of his right to testify at the suppression hearing.[1]  Order to Show Cause ("OSC") at 4; Pet. at 7-8.

## STANDARD OF REVIEW

A federal habeas court will entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  The court may not grant a petition with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  Id. § 2254(d)(1).  The court must presume correct any determination of a factual issue made by a state court unless the petitioner rebuts the presumption of correctness by clear and convincing evidence.  28 U.S.C. §2254(e)(1).

The state court decision to which 2254(d) applies is the "last reasoned decision" of the state court.  See Ylst v. Nunnemaker, 501 U.S. 797, 803-04 (1991); Barker v. Fleming, 423 F.3d 1085, 1091-92 (9th Cir. 2005).  When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the court looks to the last reasoned opinion, in this case the opinion of the California Court of Appeal.  See Nunnemaker at 801-06; Shackleford v. Hubbard, 234 F.3d 1072, 1079, n. 2 (9th Cir. 2000).

If constitutional error is found, habeas relief is warranted only if the error had a "substantial and injurious effect or influence in determining the jury's verdict."  Penry v. Johnson, 532 U.S. 782, 795 (2001) (quoting Brecht v. Abrahamson, 507 U.S. 619, 638 (1993)).

---

1. The court, upon a motion from petitioner, dismissed a fourth, and unexhausted, claim regarding double jeopardy.  Renewed Order to Show Cause at 2.

Order Denying Petition for Writ of Habeas Corpus
G:\pro-se\sj.rmw\hc.06\Chestra497.hcruling.md        3

# DISCUSSION

## I. Ineffective Assistance of Counsel

Claims of ineffective assistance of counsel are examined under Strickland v.Washington, 466 U.S. 668 (1984). In order to prevail on a claim of ineffectiveness of counsel, petitioner must establish two things. First, he must establish that counsel's performance was deficient, i.e., that it fell below an "objective standard of reasonableness" under prevailing professional norms. Id. at 687-68. Second, he must establish that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Id. Where the defendant is challenging his conviction, the appropriate question is "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." Id. at 695. It is unnecessary for a federal court considering a habeas ineffective assistance claim to address the prejudice prong of the Strickland test if the petitioner cannot even establish incompetence under the first prong. See Siripongs v. Calderon, 133 F.3d 732, 737 (9th Cir. 1998).

### A. Police Report

Petitioner contends that trial counsel failed to impeach Officer Matteucci's suppression hearing testimony by introducing the police reports into evidence. Pet. at 7-8. Petitioner contends that because the facts described in the police reports differ from the facts as Matteucci described them in his testimony, trial counsel should have been able to impeach the witness. By questioning his credibility in this way, trial counsel should have been able to undermine confidence in Matteucci's stated reasons for stopping the vehicle and the arrest. Id., P. & A. at 18. The state appellate court upheld the trial court's denial of petitioner's motion to suppress, stating, that "the facts apparent to Officer Matteucci were sufficient to support [petitioner's] initial detention." Op. at 3.

The facts of the stop and arrest, as described at the suppression hearing, were summarized by the state appellate court as follows:

> Sergeant Matteucci was on patrol when he heard a report that the Washington Mutual Bank had been robbed. The report described the robber as a black male, approximately 30 years of age, wearing blue jeans, a black t-shirt, and a black baseball cap. According to the report, the robber said he was armed.
>
> Matteucci drove toward the bank. When he was less than one half mile away, he saw a Toyota 4Runner driving toward him; i.e. away from the bank. Matteucci could see that the driver, [petitioner], was a black man in his 30's who was wearing a black t-shirt and a black "beanie-type" hat.
>
> Matteucci believed [petitioner] might be the bank robber, so he decided to follow him. To ensure his own safety, Matteucci called for backup.
>
> Matteucci followed the 4Runner through the streets of Burlingame and onto Highway 101. When other officers joined in the pursuit, Matteucci activated his lights and stopped the 4Runner. [Petitioner] pulled to the side of the highway. Because the robber was reported to have said he was armed, Matteucci and the other officers used a "high risk stop." They ordered [petitioner] out of his vehicle at gun point.
>
> [Petitioner] got out of his 4Runner. Matteucci saw that [petitioner], like the robber, was wearing jeans. Matteucci walked past [petitioner] and looked inside the 4Runner through the open driver's side window. He saw a black baseball cap on the passenger side floorboard.
>
> The officers ordered [petitioner] to walk behind the 4Runner and to lie down on the ground. [Petitioner] complied. As he did so, the demand note [petitioner] had used to rob the bank fell out of his pants. One of the officers retrieved it. Officer Matteucci also saw that money was falling out of [petitioner's] pants.
>
> About 15 minutes later, Officer Brian McKague arrived at the scene with Lasat. McKague asked Matteucci to put the black baseball cap on [petitioner]. Matteucci retrieved the cap from the 4Runner and placed it on [petitioner's] head. Lasat identified [petitioner] as the bank robber. Later the officers searched [petitioner's] pants. They found $1,100 in cash.
>
> The trial court considering this evidence denied [petitioner's] motion to suppress ruling Officer Matteucci's observations sufficient to support the initial detention and the subsequent arrest and search.

Op. at 2.

The arresting officers, <u>viz.</u>, Matteucci, Kaiser, and Gleason, filed police reports. Matteucci's police report states that "a search of [petitioner's] person at the stop location" yielded a cellphone, a note "with the writing 'I have a gun 100 + 50 only" found in

Order Denying Petition for Writ of Habeas Corpus
G:\pro-se\sj.rmw\hc.06\Chestra497.hcruling.md       5

**United States District Court**
For the Northern District of California

1 petitioner's right rear pocket, and "$1,100.00 in cash" in the left front pocket of his jeans.

2 Ans., Ex. H (Amended State Appellate Habeas Petition, Ex. A at 4, Burlingame Police

3 Report). Matteucci says nothing in the report about papers or anything else falling out of

4 petitioner's pockets. Kaiser's version of events, as stated in his police report, was:

> As I checked [petitioner's] pants pockets I found $1,100.00 in cash . . . in [petitioner's] left front pants' pocket. Upon checking the right rear pocket of [petitioner's] pants I felt a hard object in the pocket. I pulled out a dark brown leather wallet. As I pulled the wallet out of [petitioner's] right rear pocket a white piece of paper came out of the pocket with the wallet and fell to ground. This piece of paper was a note with the writing "I have a gun 100+50 only[."] I handed the note to Sgt. Matteucci.[2]

9 Id., (Ex. A at 11). Officer Gleason's report states that as Officer Kaiser removed

10 petitioner's wallet from his right rear jean pocket, a small white piece of paper fell to the

11 ground from the same pocket, which Officer Kaiser picked up. Id., (Ex. A at 12).

12 Based on this record of evidence, petitioner's claim is without merit because he is

13 unable to demonstrate that trial counsel's allegedly deficient performance resulted in

14 prejudice. First, setting aside the issue of Matteucci's credibility, it is immaterial to the

15 question of the legality of the vehicle stop or arrest whether the items fell out of petitioner's

16 pockets or were found on his person. Matteucci stopped petitioner's vehicle because of his

17 proximity to the bank and because he closely matched the race, sex, age, and clothing of

18 the suspect described in the radioed reports. The state appellate court found these factors

19 sufficient to justify the stop and the arrest. The note's appearance was irrelevant to this

20 determination. Therefore, the differences between the testimonial and written versions of

21 events regarding the provenance of the note are likewise irrelevant. Because the stories of

22 the note are irrelevant, trial counsel's alleged error could not have resulted in a different

23 outcome.

24 Second, even if the testimonial and written versions differ, petitioner has not shown

25 that this fact casts doubt on Matteucci's credibility. Rather, these are slightly different

---

2. At trial, Officer Keith Tamura, who arrived at the scene as the other officers brought petitioner to his feet, testified that he picked up the note from the ground. Ans., Ex. B, Vol. 2 (Reporter's Transcript, 3/5/03) at 242-43.

Order Denying Petition for Writ of Habeas Corpus
G:\pro-se\sj.rmw\hc.06\Chestra497.hcruling.md     6

versions of the same event, perhaps the result of different perceptions and powers of recall. Because these differences are slight, petitioner cannot show that trial counsel's failure to bring them to the trial court's attention would have changed the outcome. Finally, the alleged contradictions are about the unimportant matter whether the note was found on petitioner's person or dropped out of his pocket before the search. As stated above, the stop and the arrest were based on facts independent of the finding of the note. Petitioner, then, has not shown that these unimportant details would have made a difference in the outcome of the proceeding, and therefore, he has not shown that trial counsel's alleged error resulted in prejudice.

### B. Testimony of Other Arresting Officers

Petitioner contends that trial counsel rendered ineffective assistance when she failed to call the other arresting officers to testify as to their recollections and as to the contents of the police reports and thereby impeach Officer Matteucci's credibility. OSC at 4. This contention is likewise without merit. Because it involves the same issues and evidence as the previous claim, it has been fully addressed above.

### C. Informing of Right to Testify

Petitioner further contends that trial counsel failed to inform him about his right to testify at the suppression hearing. Pet., P. & A. at 26. Petitioner asserts that his testimony would have rebutted Officer Mattuecci's testimony that the baseball hat was in plain view and thereby undermine the validity of petitioner's arrest.[3] Id.

Petitioner's claim is without merit because he fails to demonstrate that prejudice resulted from trial counsel's allegedly deficient performance. Setting aside the issue whether trial counsel's performance was deficient, the court has already determined that

---

3. Trial counsel, Linda Bramy, submitted a declaration in which she states that she did not have petitioner testify at the suppression hearing "because I did not believe his testimony would help him prevail on the suppression motion." Ans., Ex. K at 1. Bramy asserts that petitioner did not tell her that the baseball hat was under the passenger seat and therefore not visible from outside the vehicle. Id.

Order Denying Petition for Writ of Habeas Corpus
G:\pro-se\sj.rmw\hc.06\Chestra497.hcruling.md          7

1  petitioner has not shown that prejudice resulted from trial counsel's failure to introduce
2  petitioner's impeachment evidence. Specifically, sufficient evidence existed apart from the
3  note and hat evidence to justify the stop and arrest. So, even if petitioner had testified and
4  thereby challenged Matteucci's assertion that the baseball hat was in plain view, it is
5  unlikely that the outcome of the proceeding would have been different. Again, Matteucci
6  stopped petitioner's vehicle because it was close to the bank and because petitioner closely
7  matched the description of the suspect, not because of the observations of the hat and note.
8  Accordingly, even if trial counsel's performance was deficient, petitioner has not shown
9  that the outcome of the proceeding would have resulted in a ruling favorable to petitioner.

## CONCLUSION

Applying the highly deferential standard imposed by AEDPA, this court concludes that the state court's determination was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent, nor was it based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d)(1), (2). Accordingly, the court concludes that petitioner has failed to show any violation of his federal constitutional rights in the underlying state court proceedings and parole hearing. The petition for writ of habeas corpus is DENIED. The clerk shall enter judgment and close the file.

**IT IS SO ORDERED.**

DATED: 6/6/08   _____
RONALD M. WHYTE
United States District Judge